

# NUMBER 13-23-00333-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICARDO JIMENEZ,                                                    Appellant,

v.

STATE OF TEXAS,                                                    Appellee.

## ON APPEAL FROM THE 341ST DISTRICT COURT
## OF WEBB COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Memorandum Opinion by Chief Justice Contreras**

After a jury trial, appellant Ricardo Jimenez was convicted of continuous sexual abuse of a young child, a first-degree felony, and he was sentenced to fifty years' imprisonment. *See* TEX. PENAL CODE ANN. § 21.02(a). By three issues on appeal, Jimenez argues: (1) the evidence was insufficient to support the conviction; (2) the jury charge violated his due process rights because it did not require unanimity; and (3) the trial court

erred by denying his motions for mistrial. We affirm.[1]

## I. BACKGROUND

A Webb County grand jury returned an indictment alleging that, on or about May 1, 2009, through May 1, 2012, during a period that was thirty days or more in duration, Jimenez committed two or more acts of sexual abuse against Maria,[2] a child younger than fourteen years of age. *See id.* Specifically, Jimenez was alleged to have committed: (1) aggravated sexual assault by intentionally or knowingly causing his sexual organ to contact Maria's sexual organ; (2) aggravated sexual assault by intentionally or knowingly causing the penetration of Maria's anus; and (3) indecency with a child by touching Maria's genitals with the intent to arouse or gratify his sexual desire. *See id.* § 21.02(c)(2), (4); *see also id.* §§ 21.11(a)(1), 22.021(a)(1)(A)(i). In a second count, the indictment alleged that Jimenez intentionally and knowingly caused bodily injury to Maria by "slapping her across the face" on or about September 1, 2010. *See id.* § 22.04(a)(3) (defining the offense of injury to a child).[3]

At trial, Amy Isabel Marshall testified that she is a cousin of Maria's mother, and that Maria made an outcry of sexual abuse to her in February of 2014, at Maria's grandmother's house in Mirando City. According to Marshall, Maria overheard her mother say that she was "going to get back with [Jimenez]," and that upset Maria. When Marshall

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001(a).

[2] To protect the identity of the complainant, we refer to her by the pseudonym given to her in the indictment. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. CODE CRIM. PROC. ANN. ch. 58, subch. C ("Confidentiality of Identifying Information of Sex Offense Victims").

[3] A third count in the indictment alleged that, on or about May 1, 2012, Jimenez committed aggravated assault with intent to place Maria in fear of imminent serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) (defining the offense of terroristic threat). The State abandoned that count prior to trial.

asked why that upset her, Maria reported that "when [she] was in first grade, . . . every time that [her] mom would leave the house, [Jimenez] would make [her] take all [her] clothes off," direct her to lay on the bed, and "get his fingers and . . . touch [her] vagina." According to Marshall, Maria reported that Jimenez "put a pillow on her face, and then he would put something in her vagina." Maria told Marshall that she would try to hide from Jimenez, but "he would get very angry, and then he would beat her." Maria told Marshall that she did not initially report the abuse because Jimenez threatened to hurt or kill her and her mother if she did. Marshall contacted police, despite Maria's fear that doing so would cause Jimenez to hurt her family.

Maria was interviewed at the Children's Advocacy Center (CAC) in 2014 and again in 2018. Lizette Sandoval, who conducted the 2018 interview, testified that Maria's recollections were "very consistent" and she "seemed truthful." Defense counsel objected to this testimony and requested a mistrial and instruction to disregard; the trial court denied the requests.

Maria's mother testified that, beginning in 2009, she and her family lived with Jimenez in Laredo. She said she trusted Jimenez at first and she often left Maria alone with Jimenez because Jimenez "wouldn't let [her]" take Maria with her on errands. In 2011, she separated from Jimenez and she and her children moved back to Mirando City to live in her brother's mobile home. Following Maria's mother's testimony, defense counsel renewed his objection to Sandoval's remark that Maria "seemed truthful" in her 2018 interview, and he asserted that caselaw supported his position. The trial court stated that, if counsel provided that caselaw to him, he would issue an instruction to disregard to the jury.

3

Licensed professional counselor Brisa Zurita testified that she provided "trauma[-]focus[ed] cognitive behavioral therapy" for Maria in 2018. Zurita read from a lengthy written narrative provided by Maria in which Maria explained the details of the abuse. After Zurita's testimony, defense counsel again renewed his objection to Sandoval's earlier remark about Maria's veracity, and he provided citations to caselaw. This time, the trial court granted counsel's request for an instruction and advised the jury as follows:

> The first witness [sic] was Ms. Lizette Sandoval, one of the counselors at the CAC. And during her testimony she testified that Maria seemed to be truthful. The fact of whether Maria was truthful or not during her counseling about her story is [within] the province of this jury. So I am going to order you to disregard that statement. You are not to consider that statement in your deliberations.

Counsel did not renew his request for mistrial at this time.

Maria testified she was born on December 23, 2002, and she was twenty years old at the time of trial. She met Jimenez when he patronized a restaurant where her mother was working. Maria said she was around four years old at the time, and her mother would take her to work with her because there was no one else to watch her. At some point, Maria's mother began a romantic relationship with Jimenez. Maria said her relationship with Jimenez was good at first, and she considered him like a father. However, around the time her sister was born on April 16, 2009, Jimenez began acting "inappropriate[ly]" with her. At that time, the family was living with Maria's grandmother in Mirando City. Maria testified that she slept in between her mother and Jimenez during that time, and once, when her mother got up in the middle of the night to tend to her newborn sister who was crying, Jimenez "slipped his fingers to my vagina and started touching me." Maria said Jimenez stopped when her mother came back into the room.

4

Subsequently, the family moved to Laredo, where Maria started first grade. Maria testified to a second incident, while the family was living in Laredo, in which Jimenez "put the pillow on my face and he took off my shorts or my underwear," and "[h]e started touching with his fingers and then from his fingers he started touching with his penis." When counsel asked what Jimenez was "touching with his fingers and his penis," Maria replied: "My vagina." Maria said Jimenez then inserted the "tip" of his penis in her vagina. Afterward, he threatened to kill her and her mother if she told anyone what happened.

Maria testified that, another time when she lived in Laredo, Jimenez "put[] me on top of the bed an[d] trie[d] to have some sort of intercourse with me. And, again, it was only . . . the tip of the penis, not the whole thing." Maria stated that Jimenez asked her to perform oral sex, and when she refused, he "pinned her down" and slapped her with his hand, which was so painful that it made her cry.[4]

Finally, on another occasion while she lived in Laredo, Jimenez asked her to take off her clothes, "tried to insert [his penis] in [her] vagina," and then "tr[ied] to insert it in [her] anus," which "was a lot more painful." When asked how much time passed between this incident and the previous one, Maria stated, "it possibly could have been a couple of months." She said she and her mother moved away from Laredo while she was in the third grade.

On cross-examination, defense counsel questioned Maria about her 2018 CAC interview and how her statements there differed from her 2014 CAC interview and her trial testimony. Maria agreed that she gave more details about the abuse in 2018 than

---

[4] Maria also testified that, when she was around eight years old, Jimenez "gave [her] the hardest slap [she] ever felt" while they were sitting in a truck in a parking lot.

she did in 2014. She further agreed that, though she stated in her 2018 interview that the abuse occurred "every time [her] mom left to run an errand," that was not true. And she agreed that, though she told Sandoval in 2018 that Jimenez penetrated her anally "more than once," it in fact happened only "once." An audio recording of the 2018 CAC interview was entered into evidence and played for the jury.

After Maria's testimony concluded, defense counsel re-urged his request for a mistrial based on Sandoval's remark that Maria "seemed truthful" during her CAC interview. The trial court denied the request.

Armando Garza III, a pediatrician, testified that he examined Maria on July 1, 2014, and found no physical signs of abuse. A report from his examination was entered into evidence at trial without objection. Under "History of Present Illness," the report states in part: "Victim [Maria] stated during interview 'My stepfather touched me' (pointing and indicating to her genital area)[] 'about when I was in first grade, and in 6th' 'several times' 'he put his hands in my pants here'[] (pointing and indicating to her genital area) 'at home.'" Garza stated that he understood this to mean that Maria was abused from first to sixth grade.

The jury found Jimenez guilty of continuous sexual abuse of a young child but not guilty of injury to a child. He was sentenced as set forth above, and this appeal followed.

## II.    DISCUSSION

### A.    Evidentiary Sufficiency

By his first issue on appeal, Jimenez argues that there was no testimony "that would support the occurrence of at least one offense falling inside the initial 30 days and at least one act falling outside the 30-day period." Specifically, he argues that "the dates

6

Maria recalled in her testimony" do not "meet the elements" of the statute for that reason. We construe this as a challenge to the sufficiency of the evidence to support the conviction.

### 1. Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a sufficiency review, we view the evidence in the light most favorable to the verdict and consider all of the admitted evidence. *Id.* We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *See id.*; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses"; therefore, "[w]hen the jury could reasonably draw conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict." *Stahmann*, 602 S.W.3d at 577; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the

State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Malik*, 953 S.W.2d at 240). "The law 'authorized by the indictment' consists of the statutory elements of the offense as modified by the indictment allegations." *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

Here, a hypothetically correct charge would instruct the jury to find Jimenez guilty of continuous sexual abuse of a young child if he: (1) committed two or more acts of sexual abuse against Maria; (2) there were "at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse"; and (3) at the time of each of the acts of sexual abuse, Jimenez was seventeen years of age or older and Maria was younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b); *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021); *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (noting that, to convict under § 21.02, the evidence must establish there were "at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse"); *see also Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (Contreras, C.J., concurring). An "act of sexual abuse" includes indecency with a child under penal code § 21.11(a)(1) if the actor committed the offense in a manner other than by touching the breast of a child. TEX. PENAL CODE ANN. § 21.02(c)(2); *see id.* §§ 21.11(a)(1) (providing that a person commits indecency with a child if the person "engages in sexual contact with the child or causes the child to engage in sexual contact"), 21.11(c)(1) (defining "sexual contact" to include "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," "with the intent to arouse or gratify the sexual desire of any person"). An "act of sexual abuse" also includes

8

aggravated sexual assault under penal code § 22.021. *Id.* § 21.02(c)(4); *see id.* § 22.021(a)(1)(A)(i) (providing that a person commits aggravated sexual assault if the person "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of another person by any means, without that person's consent").

In order to convict a defendant of continuous sexual abuse of a young child, the jury need not agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. *Id.* § 21.02(d). The jury must merely agree unanimously that the defendant, during a period that is thirty or more days in duration, committed two or more acts of sexual abuse. *Id.*

A victim's testimony alone can support a conviction for child sexual abuse. TEX. CODE CRIM. PROC. ANN. art. 38.07. And "[i]t is a longstanding rule that the State is not required to prove that an offense was committed on the date alleged in the indictment . . . but may prove that the offense was committed on any date prior to the return of the indictment and within the period of limitations." *Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd) (citing *Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008)).

### 2.    Analysis

Jimenez argues that Maria's testimony "does not show the date of the first incident" or "whether the second incident falls outside of the 30 days from the first incident," and that "the third incident cannot meet the requirement of outside the 30 days."[5]

---

[5] Jimenez's briefing as to his first issue contains several incorrect statements and citations to irrelevant authority. For instance, his brief repeatedly states that, because Maria's date of birth is December 23, 2002, "May 1, 2012, is the cutoff date for any acts upon Maria when 14 years of age or younger," and "[s]ome acts are alleged to have occurred after Maria's fourteenth birthday." In fact, Maria's fourteenth birthday was December 23, 2016, and there is no evidence of any acts of sexual abuse occurring on or

9

Maria testified in detail at trial as to four specific acts of sexual abuse committed against her by Jimenez. The first act occurred when she was sleeping in between her mother and Jimenez, and her mother got out of bed because Maria's baby sister was crying. Maria testified that this first act of abuse occurred while she was living with her grandmother in Mirando City, and it happened shortly after her sister was born on April 16, 2009, before Maria entered first grade. Maria then testified regarding three additional acts of sexual abuse, all of which occurred after the family had moved to Laredo to live in Jimenez's apartment. Maria further testified that she and her family moved back to Mirando City when she was in third grade.

The State asserts that the evidence—including testimony by Maria, her mother, Sandoval, and Zurita—"repeatedly showed that continuous sexual abuse occurred from first to third grade," and it notes that "[n]o child progresses from first to third grade in 30 days or less." However, although the evidence clearly established that Maria lived with Jimenez in Laredo from first to third grade, Maria did not testify at trial that the abuse occurred *throughout* those three years, and the other witnesses' testimony does not support such a finding. Moreover, there was no evidence as to how much time elapsed

---

after that date. Jimenez also repeatedly observes that penal code § 21.02 became effective on September 1, 2007, and does not apply to any acts of sexual abuse which occurred before that date. *See* Act of May 17, 2007, 80th Leg., R.S., ch. 593, § 4.01(a), 2007 Tex. Gen. Laws 1127, 1148. But there was no evidence in this case that Jimenez committed any acts of sexual abuse against Maria prior to September 1, 2007. Jimenez next cites authority establishing that an act of sexual abuse which occurred outside of Texas cannot support a conviction for continuous sexual abuse of a young child. *See Lee v. State*, 537 S.W.3d 924, 926 (Tex. Crim. App. 2017) (observing that one element of the offense is "two or more violations of enumerated penal code sections"). But there is no evidence in this case that Jimenez committed any acts of sexual abuse outside of Texas. Finally, Jimenez describes a case in which the appellant was convicted of both continuous sexual abuse of a young child and indecency with a child, but the latter conviction was reversed because the indecency offense "did not occur outside the period in which the Continuous Sexual Abuse of a Young Child offense was committed." *Allen v. State*, 620 S.W.3d 915, 922 (Tex. Crim. App. 2021) (applying TEX. PENAL CODE ANN. § 21.02(e)). This authority is irrelevant because Jimenez was convicted of only one offense.

10

between the first act of abuse (which Maria testified occurred in Mirando City) and the time the family moved to Laredo. In fact, Maria could not provide precise dates for any of the acts of abuse, and she could only provide an approximate date as to the first act.[6]

Nevertheless, when asked how much time had passed between the third and fourth acts, Maria stated "it possibly could have been a couple of months." And the evidence before the jury included Garza's report, which Garza said indicated that the abuse occurred until Maria was in sixth grade. We conclude that the evidence, taken as a whole, reasonably supports a finding that at least thirty days elapsed between the first and last acts of abuse. In this regard, it is important to note that "[t]he legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.). Further, "child victims cannot be expected to testify with the same clarity and ability that is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). In § 21.02 cases, "children often use life events rather than specific dates to define the period of continuous abuse." *Perez*, 689 S.W.3d at 378; *see Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (finding evidence of continuous abuse sufficient where the complainant testified that the abuse began in the middle of sixth grade and ended when she moved out of the defendant's house). "Jurors are permitted to take these benchmarks

---

[6] The State notes that, in his closing argument, defense counsel mentioned that Maria stated in her 2018 CAC interview that "the sexual abuse happened weekly, or every other week, every time my mom would go to H-E-B." However, Maria recanted that statement at trial. In any event, even if the jury credited Maria's statement in her interview, that alone would not support a finding that the acts of sexual abuse were separated by thirty days or more.

and draw a reasonable inference about the period of abuse." *Perez*, 689 S.W.3d at 378

(citing *Wishert v. State*, 654 S.W.3d 317, 328–29 (Tex. App.—Eastland 2022, pet. ref'd)).

For the foregoing reasons, the evidence was sufficient to allow a reasonable juror to find the elements of the offense beyond a reasonable doubt. *See Stahmann*, 602 S.W.3d at 577. Jimenez's first issue is overruled.

## B.    Jury Unanimity

By his second issue on appeal, Jimenez argues that the trial court erred by denying his requested jury charge instruction regarding unanimity as to the offense of continuous sexual abuse of a young child. At the charge conference, the State proposed the following instruction:

> Members of the jury, . . . you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant, Ricardo Jimenez, or the exact date when those acts were committed. You are required to agree unanimously that the defendant, Ricardo Jimenez[,] during a period that is 30 days or more in duration, committed two or more acts of sexual abuse.

Defense counsel objected and instead proposed the following instruction:

> Mr. Jimenez stands accused of continuous sexual abuse of a child. In this case the State has presented three allegations involving several distinct acts of alleged sexual abuse. You must consider each of these three allegations individually. If you believe that one or more of the alleged acts of sexual abuse did not occur, you shall disregard that alleged act.
>
> In order to find Mr. Jim[e]nez guilty of continuous sexual abuse of a child, you must be unanimous as to which specific acts of alleged sexual abuse occurred. But it must be at least two. If you are not unanimous about any two specific acts of alleged sexual abuse, you must find him not guilty.

The trial court overruled counsel's objection and included the State's requested instruction in the jury charge.

### 1.    Standard of Review and Applicable Law

After a jury trial in a felony case, the trial court is required to submit to the jury a

12

"written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. We review the trial court's refusal to submit a jury charge instruction for abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). If we find error in the jury charge, and the defendant preserved the alleged error by a timely request or objection, as here, then we must reverse as long as the error was not harmless. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *see Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984).

### 2. Analysis

The instruction submitted to the jury precisely tracks the wording of the statute governing the offense. *See* TEX. PENAL CODE ANN. § 21.02(d) ("If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."). Nevertheless, Jimenez argues that, because the statute does not require unanimity as to which specific acts of sexual abuse were committed, the "lack of unanimity violates [d]ue process and the right to a fair and impartial jury" under the United States and Texas Constitutions. *See* U.S. CONST. art. V, VI, XIV; TEX. CONST. art. V, § 13.[7]

---

[7] Ordinarily, the constitutionality of a statute is a question of law we review de novo, beginning with

As Jimenez concedes, many Texas appellate courts have considered this issue—including the transferor court of appeals and this Court—and all of them have concluded that the statute does not violate the constitutional right to jury unanimity. *See Perez,* 689 S.W.3d at 381 (noting that the individual "acts of sexual abuse are merely the manner and means of committing an element of the offense"); *Navarro v. State*, 535 S.W.3d 162, 166 (Tex. App.—Waco 2017, pet. ref'd); *Carmichael v. State*, 505 S.W.3d 95, 106 (Tex. App.—San Antonio 2016, pet. ref'd); *Ingram v. State*, 503 S.W.3d 745, 748 (Tex. App.—Fort Worth 2016, pet. ref'd); *Holton v. State*, 487 S.W.3d 600, 608 (Tex. App.—El Paso 2015, no pet.); *McMillian v. State*, 388 S.W.3d 866, 871–73 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Kennedy v. State*, 385 S.W.3d 729, 730 (Tex. App.—Amarillo 2012, pet. ref'd); *Jacobsen v. State*, 325 S.W.3d 733, 736–39 (Tex. App.—Austin 2010, no pet.); *Render v. State*, 316 S.W.3d 846, 854-858 (Tex. App.—Dallas 2010, pet. ref'd). These courts have observed that, though jurors must unanimously agree on all elements of a crime in order to convict, they need not agree on all the underlying facts that make up a particular element. *See, e.g.*, *Jacobsen*, 325 S.W.3d at 736 (citing *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005)). Thus, "[w]hen alternative manners and means of committing an offense are submitted to a jury, it is appropriate for the jury to return a

---

the presumption that the statute is valid and that the Legislature did not act arbitrarily and unreasonably in enacting it. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The party challenging the statute has the burden to establish its unconstitutionality. *Rosseau*, 396 S.W.3d at 557. Moreover, "a challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court during or after trial." *Cooper v. State*, 673 S.W.3d 724, 749 (Tex. App.—Fort Worth 2023, no pet.); *see* TEX. R. APP. P. 33.1(a)(1); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see also Garcia v. State*, No. 02-21-00203-CR, 2022 WL 17173127, at *3 (Tex. App.—Fort Worth Nov. 23, 2022, pet. ref'd) (mem. op., not designated for publication) (finding that appellant "drape[d] his complaint in a jury-charge-error claim through which is plainly visible a bare challenge to the constitutionality of [§] 21.02(d)" and therefore failed to preserve the issue). For purposes of this analysis, we assume but do not decide that Jimenez preserved this issue by requesting an alternative jury instruction.

general verdict of guilty if the evidence supports a conviction under any one of them." *Id.* (citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)). In the context of § 21.02, "it is the commission of two or more acts of sexual abuse over the specified time period—that is, the pattern of behavior or the series of acts—that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict." *Id.* at 737. "[T]he individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed." *Id.*

In arguing that we should revisit this caselaw, Jimenez cites United States Supreme Court authority establishing that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed"); *see Blakely v. Washington*, 542 U.S. 296, 306 (2004); *see also Alleyne v. United States*, 570 U.S. 99, 116 (2013) (holding that "facts that increase mandatory minimum sentences must be submitted to the jury" and proven beyond a reasonable doubt). Jimenez argues that, because a conviction under § 21.02 carries with it a mandatory minimum twenty-five-year prison sentence, *see* Tex. Penal Code Ann. § 21.02(h), the jury needed to unanimously find each individual act of sexual abuse beyond a reasonable doubt.

We disagree that this conclusion is compelled by the cited caselaw. These cases hold that, when a particular fact finding may increase a defendant's minimum or maximum

sentence, the defendant is entitled to have the jury make that fact finding beyond a reasonable doubt as part of the constitutional right to jury trial. *See Alleyne*, 570 U.S. at 116; *Apprendi*, 530 U.S. at 490 (holding that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed"). They do not state or imply that a jury must be unanimous as to which manner and means were used to commit a statutorily-defined element of an offense. To the contrary, the United States Supreme Court has held that a jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999).

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Id.* (citing *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring)). We find nothing in *Apprendi* or its progeny that would cast doubt on the law that was previously set forth and illustrated in *Richardson*. In any event, Jimenez cites no authority deviating from the overwhelming appellate-court precedent that individual acts of sexual abuse are "merely the manner and means of committing an element of the offense" defined in § 21.02. *See, e.g.*, *Perez,* 689 S.W.3d at 381; *Carmichael*, 505 S.W.3d at 106.

Because Jimenez's requested instruction was not "law applicable to the case," the trial court did not err by refusing to include it in the jury charge. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. We overrule Jimenez's second issue.

16

**C. Motion for Mistrial**

By his third issue, Jimenez argues that the trial court abused its discretion in denying his motions for mistrial on grounds that "expert witnesses improperly testified that [Maria] was truthful."

**1. Standard of Review and Applicable Law**

"A mistrial is a device used to halt trial proceedings where error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Guerrero v. State*, 528 S.W.3d 796, 801 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is an appropriate remedy in extreme circumstances for a narrow class of "highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *see Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) ("Even when a prosecutor intentionally elicits testimony or produces other evidence before the jury which is excludable at the defendant's option, our law prefers that the trial continue."). Because it is an extreme remedy, a mistrial should be granted only when residual prejudice remains after less drastic alternatives are explored. *Ocon*, 284 S.W.3d at 884–85.

We review the denial of a motion for new trial for abuse of discretion, "reversing only if no reasonable view of the record could support the trial court's ruling." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017); *see Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). In determining whether the trial court abused its discretion in denying a mistrial, we consider (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the

misconduct. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011).

## 2. Analysis

During Sandoval's direct examination, the prosecutor asked: "[W]hen you conduct forensic interviews, are you looking for any indications that the child's allegations could have been suggested to them?" Sandoval replied, "No." The prosecutor then asked: "[I]n your experience conducting forensic interviews, have you come across children who have been put up to making allegations as part of divorce or custody proceedings?" Sandoval replied, "Yes." At that point, defense counsel objected to the line of questioning on grounds of irrelevance and unfair prejudice. The trial court overruled the objection, and the following colloquy occurred:

> Q. [Prosecutor] So in some situations, what is it that you would typically see that would indicate that maybe allegations are unfounded?
>
> A. [Sandoval] Usually inconsistencies in the interview.
>
> Q. And do you remember what your input or your opinion as a forensic interviewer was regarding Maria's interview?
>
> A. She was very consistent. She seemed truthful.

Defense counsel objected on grounds that the testimony was "improper" because "[t]his witness cannot say who's truthful and who's not truthful." Counsel also requested an instruction to disregard and moved for mistrial. The trial court overruled the objection and denied the requests. Following Zurita's testimony, the trial court instructed the jury to disregard Sandoval's remark. As noted above, defense counsel re-urged his motion for mistrial on three occasions during trial, and the trial court denied the motions.[8]

---

[8] Jimenez claims in his brief as to this issue that Zurita testified "she could tell if a child was lying" and that "Maria was truthful." However, the record does not reflect that Zurita made any such remarks.

18

A witness, whether expert or lay, may not give opinion testimony as to the truthfulness of another witness. *See Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993) (concluding that "expert testimony that a particular witness is truthful is inadmissible under Rule 702"); *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.—El Paso 2002, no pet.) ("Although this issue generally arises in the context of expert witnesses, lay opinions must also be helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. . . . It follows, then, that a lay witness is not permitted to offer an opinion that another witness is truthful."). This type of testimony is inadmissible "because it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue[';] it decides an issue for the jury." *Yount*, 872 S.W.2d at 709 (quoting *Duckett v. State*, 797 S.W.2d 906, 910, 913 (Tex. Crim. App. 1990)); *see* Tex. R. Evid. 701, 702. The trial court therefore correctly, if tardily, sustained defense counsel's objection to Sandoval's remark that Maria "seemed truthful."

However, the trial court clearly instructed the jury to disregard the testimony, and in the absence of evidence to the contrary, we generally presume the jury followed the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). In this situation, the trial court should grant a mistrial only when an improper question or answer is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

After considering the factors elucidated in *Archie*, 340 S.W.3d at 739, we cannot conclude the trial court erred in denying Jimenez's motions for mistrial. First, regarding

19

severity of the misconduct, though Sandoval's testimony was improper, it was not directly elicited by the State, and it was not "of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *See Wood*, 18 S.W.3d at 648. Second, regarding curative measures, though the instruction to disregard was not issued immediately after the remark, Jimenez points to nothing in the record indicating that the jury disobeyed the instruction. *See Flores v. State*, 513 S.W.3d 146, 167 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding the record did not show that the trial court's instruction to disregard a doctor's testimony that a sexual abuse victim was credible was ineffective in curing any prejudice). Finally, as to the certainty of conviction absent the misconduct, we again note that the testimony of a victim of a sexual offense alone is sufficient to support a conviction for sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1). Here, the jury heard detailed direct testimony from Maria regarding the acts of abuse perpetrated by Jimenez, and it also heard an audio recording of Sandoval's 2018 interview with Maria. At closing, the prosecutor mentioned that Maria's story was consistent and that she "has no incentive to lie," but did not refer to Sandoval's remark explicitly or implicitly. We find it highly unlikely that Sandoval's brief off-hand remark affected the jury's verdict. *See Flores*, 513 S.W.3d at 167 ("It is unlikely that the jury's decision to convict was influenced by the pediatrician's testimony that he believed complainant's story to be credible—the same story the jury heard from complainant."); *see also* TEX. R. APP. P. 44.2 (standards for reversible error in criminal cases).

We conclude the trial court did not abuse its discretion in denying Jimenez's motions for mistrial. His third issue is overruled.

### III.    CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
28th day of August, 2024.